UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
JOHN B. OHLE, III,                      :   13 CV 450 (JSR) (AJP)
       Petitioner,                      S3 08 Cr. 1109 (JSR)
                                        :
     - v. -
                                        :
UNITED STATES OF AMERICA,               :
       Respondent.                      :

                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S MEMORANDUM OF LAW IN RESPONSE TO PETITIONER OHLE'S REQUEST FOR DISCOVERY

                 **PREET BHARARA**
                 **United States Attorney for the Southern**
                 **District of New York**

**STANLEY J. OKULA, JR.,**
**Assistant United States Attorney,**
**NANETTE L. DAVIS,**
**Special Assistant United States Attorney,**

     ― **Of Counsel** ―

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  :
JOHN B. OHLE, III,                                :   13 CV 450 (JSR) (AJP)
              Petitioner,                             S3 08 Cr. 1109 (JSR)
                                                  :
     - v. -
                                                  :
UNITED STATES OF AMERICA,
              Respondent.                         :
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### GOVERNMENT'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT OHLE'S REQUEST FOR DISCOVERY

The United States respectfully submits this Memorandum of Law in response to petitioner John B. Ohle III's ("defendant" or "Ohle") motion seeking certain discovery and authority to issue subpoenas in furtherance of his habeas motion. For the reasons set out below, to the extent that Ohle seeks authorization to subpoena IRS files, that request should be denied because those files relate to an issue that is not in dispute --- *viz.*, Jenkens & Gilchrist's role as payer of the fraudulently-obtained third party fees. In addition, to the extent that Ohle seeks yet again to have the Government provide electronic or other copies of the pertinent documents to him, that request, too, should be denied because the Government has already provided those documents, or made them available, in three different formats: a searchable database (multiple times); disks containing non-searchable pdfs or TIF images; and originals. The Government should therefore not be required --- three years after providing the disks and making the originals available --- to provide the discovery yet again. To the extent that Ohle seeks various discovery

1

or other relief from his attorneys, the Government takes no position with respect to those requests.

## BACKGROUND

Because Ohle engages in a selective and at times factually incorrect recitation of certain background facts, it is important to recapitulate certain salient points regarding the disputed issues at trial and the production of discovery.

**The "Referral Fee" Issue at Trial**

In our submissions opposing Ohle's post-trial motions, we reviewed various aspects of the trial evidence, including the testimony and documents concerning the fraudulent procurement of referral fees through third-party invoices that were submitted by Ohle and his co-conspirators (including William Bradley and Douglas Steger) to the Jenkens & Gilchrist ("J&G") law firm, where they were approved for payment by J&G tax partner Paul Daugerdas.  See Trial Tr. 174-80 (testimony of Daugerdas secretary Sandra Burnside explaining that Daugerdas approved payment by J&G of HOMER invoices, including those for third parties).  The critical issue at trial, therefore, was not whether J&G made those payments to the third parties or whether those payments were reported to the IRS as third-party payments.[1]  Instead, the hotly-contested issue at trial revolved around whether J&G's payment of those fees served to defraud Bank One by diminishing Bank One's cut of the fees or, instead, whether J&G's portion of the fees was caused to be diminished.  On that score, the testimony and documentary proof demonstrated that, as a result of successful HOMER transactions, Bank One was paid a 1.8% fee when there was no

---

[1] Indeed, the Government provided to Ohle and Bradley during pre-trial discovery, and marked as Government Exhibit 47-1 at trial, an IRS Form 1099 filed with the IRS by J&G that evidenced the $225,000 in bogus referral fees made to co-conspirator William Bradley.

third-party and a lesser (generally 1%) fee when a third-party payment was involved.  See GX 2-42; 2-43; Tr. 2186; see also Tr. 90 (testimony of Bank One's Paul Ferguson, indicating that payment of referral fees served to lessen Bank One's cut of the fees).[2]

**Discovery Production**

Ohle was provided with a disk of Bank One documents at his initial appearance in this district on December 4, 2008.  In February 2009, the discovery was made available for physical inspection.  In June 2009, approximately eleven months prior to trial, Ohle's then law firm of Frankel & Abrams was sent a disk containing the core Jenkens & Gilchrist documents.  Additional discovery was provided on a rolling basis to Ohle's counsel.  In addition, Frankel & Abrams obtained a hard drive from the Government's discovery vendor, CACI, of the various searchable Concordance databases comprising the discovery in this case.

Following the post-trial discovery of the 110 J&G boxes, the Government took various steps to make the contents of those boxes available to Ohle and his counsel, in three different ways.  First, following the scanning and formatting of the documents, we provided to counsel for Ohle and Bradley all of the contents of the boxes in a searchable "Concordance" database that was procured from CACI, a Government contractor.  We also provided counsel for Ohle a separate DVD of the documents in a scanned, image format ─ that is, as PDFs or TIF images. In addition, we made the originals of the documents and disks available to Ohle and his counsel for inspection over a number of days.  See Declaration of AUSA Stanley Okula, ECF Docket

---

[2] As this Court observed in sustaining the Government's use of a summary chart in its rebuttal summation, "I think any reasonable juror could if they wished, based on the combination of this chart and what is in evidence, draw the conclusion that Bank One's normal fee was 1.8 percent and that the only exception were referral fees and that in the case of referral fees involved with the defendants here, the bank got less than 1.8 percent. I think that's, regardless of whether every single transaction is on this chart or not, a perfectly reasonable inference." Tr. 2186.

Entry #164 ("Okula Decl.") ¶¶ 4-5. As the Court may recall, the Government paid for Ohle's lodging costs while he reviewed the original boxes and disks at the IRS.

With respect to Ohle's copying of the disks contained in one or more of the J&G boxes, counsel for Ohle informed IRS Special Agent Christine Mazzella, when reviewing the documents (and disks contained therein) at the IRS with defendant Ohle, that he (counsel) had copied certain of the disks using a computer (or computers) that had been brought to the IRS. When Agent Mazzella spoke to SAUSA Nanette Davis as a result, it was decided, in order to preserve the integrity of the disks, to inform Ohle that the Government would undertake the copying of the disks. Soon thereafter, Agent Mazzella relayed to Ohle's counsel that the Government would copy the disks for him, at which time counsel for Ohle informed Agent Mazzella that the copying was "almost complete." Upon learning this, Agent Mazzella informed Ohle's counsel that he could finish copying what was left. Soon thereafter, Ohle's counsel informed Agent Mazzella that he was done with his review. Counsel for Ohle never contacted your declarant or SAUSA Davis to indicate that additional disks needed to be copied. Moreover, following Ohle's review of the documents, neither counsel for Ohle nor Ohle himself ever indicated that his review was incomplete or had been hampered in any way. Okula Decl. ¶ 5. It is only now, in the habeas setting, that Ohle contends that his request to copy the disks was turned down.

Subsequently, in the habeas setting, Ohle's initial habeas counsel, Priya Chaudhry, was provided a new hard drive containing the same searchable Concordance databases that had previously been provided to trial counsel Stuart Abrams. This hard drive was created by a technical advisor at the U.S. Attorney's Office, as CACI no longer had the Ohle discovery in its possession. That hard drive was tested and reviewed by the technical advisor prior to shipping

4

– he determined that the hard drive was in good working order at that time, and was ready to use, with or without Concordance.[3]

## ARGUMENT

### POINT ONE

#### OHLE'S REQUESTS TO SUBPOENA THE IRS AND COMPEL PRODUCTION OF A NEW CONCORDANCE DATABASE, AT GOVERNMENT EXPENSE, SHOULD BE DENIED

Ohle seeks authority to issue subpoenas to the IRS to obtain documents concerning the IRS audit of J&G and to compel the production for the third time, of a new hard drive containing the Concordance database. With respect to the former, Ohle maintains that he is seeking the IRS audit documents because he wants to establish that J&G (and not Bank One) was the entity that issued payments and corresponding IRS Forms 1099 to its referral sources (including Bradley's law firm, and Steger's entity --- Invested Interest). This proof, Ohle maintains, constitute the "needle in the haystack" that demonstrates Ohle's actual innocence. Ohle Br. at 5, 6.

Ohle's request should be denied, as the documents he seeks relate to an issue that is not in dispute: J&G's status as the entity that paid the third party referral sources (such as Bradley and Steger). Indeed, the Government from the outset of the case has embraced the factual claim that J&G paid the referral fees, and, where appropriate, issued IRS Forms 1099. Thus, paragraph 13 of the Indictment alleged as follows:

> As part of their efforts to market, sell, and implement HOMER tax shelters, JOHN
> B. OHLE III, the defendant, other members of Bank A's ISO, and attorneys at J&G

---

[3] It is important to note that Concordance is a database management software that permits easier searching of electronic documents. However, the discovery provided to Abrams could be reviewed without Concordance, using the TIFF image files.

> agreed to pay referral fees to third parties who referred a client who ultimately entered into a HOMER tax shelter. **Generally, the referral fees were paid after the third-party referral sources sent invoices to J&G, leading it to pay the fees to the third parties based on the amounts stated in the invoices. J&G would also issue to the third-parties, where appropriate, IRS Forms 1099-MISC, reflecting the payment of the referral fees as non-employee compensation to the third parties.** When a referral fee was paid in connection with a particular HOMER tax shelter, it served to reduce the total fee that Bank A would otherwise be paid for that tax shelter. Pursuant to Bank A's code of conduct for employees, ISO members were not permitted to receive or accept referral or third-party fees, either directly or indirectly, in connection with the sale and implementation of the HOMER tax shelters or any other ISO tax strategies.

S-3 Indictment, ¶ 13, ECF Docket Entry #66 (emphasis added).

Given the foregoing and the trial proof outlined above (demonstrating that the referral fees were paid from J&G upon Daugerdas's approval), there is nothing to be gained from the discovery frolic Ohle requests, because there is no dispute, and never was, that J&G was the entity that paid the third-party fees.  Moreover, the fact that IRS may have issued Forms 1099 to Bradley's law firm (which Ohle was aware of prior to trial, and which is not in dispute) or Jonathan Freedman's entity, Invested Interest (which is less than clear)[4]  is also irrelevant to any disputed issue. Stated another way, the fact that J&G might have issued a Form 1099 to Invested Interest, or filed it with the IRS, only helps to prove a fact <u>not</u> in dispute – that J&G paid the third-party fees – and does nothing to assist Ohle's claim because it does not establish that J&G's fees (rather than Bank One's) were diminished as a result of the payment of the bogus invoices.

---

[4]  As set forth in paragraph 9 of the Okula Declaration, an IRS search of its computer records after trial revealed that no Form 1099 had been filed for the tax identification number contained on the Form 1099 for Invested Interest, which Ohle attached as Exhibit 14 to his second new trial motion. Moreover, no identity or IRS records exist with respect to that tax identification number.

Finally, to the extent that Ohle persists in maintaining that the issuance to Invested Interest by J&G of a Form 1099 is somehow relevant to any disputed issue, the Government would agree to stipulate to that fact, for purposes of the Court's analysis.

The same analysis warrants this Court's rejection of Ohle's additional request that the Government be compelled to produce, at its cost, yet another Concordance database. Put simply, because Ohle is seeking documents relating to the "J&G payment" issue, his request should be denied because the issue is not in dispute. Moreover, the request should be denied because the Government has produced the discovery multiple times in Concordance format, as well as pdf and TIFF images of the same documents. As the Government set out in its prior filings with the Court on the discovery issues, and in its letter to Mr. Eastland on August 14, 2014, the latter of which is attached to the defendant's motion as Exhibit 6, we have produced the databases in the formats we originally received from the producing party or entity. No changes have been made to the data – thus, should the Government re-reproduce the Concordance database, it will contain the same alleged deficiencies.[5] In other words, to cure the alleged deficiencies would require returning to each producer of the respective documents and have them reproduce the documents to the Government (if that is even possible at this late date), all at a great and unnecessary expense of time and resources. What is more, Ohle has had access to the original documents from the inception of this case, he had ample time to review those documents after trial, and, indeed, still has that access now through current counsel. Given this history, largely involving Ohle's third and fourth attorneys, there is simply no basis to

---

5 Tellingly, none of Ohle's attorneys, including current habeas counsel, ever took the Government up on its offer of making its technical advisor available for consultation about these alleged deficiencies.

7

require the Government to produce yet another formatted database, much less one paid for by the Government.

## POINT TWO

### THE GOVERNMENT TAKES NO POSITION WITH RESPECT TO OHLE'S MOTION AS IT RELATES TO PRIOR COUNSEL

Ohle also seek various relief with respect to certain records in the possession of his prior counsel. Because the Government has no stake in those disputes, we take no position with respect to this branch of Ohle's motion. Finally, with respect to the request to subpoena the medical records of Mr. Abrams, the Government takes no position as to that subpoena request, but we note that the legal issue in the context of an ineffective assistance of counsel claim based on attorney illness is one of attorney conduct, whatever the explanation for that conduct might be. Bellamy v. Cogdell, 974 F.2d 302, 308 (2d Cir. 1992) (en banc). Thus, it is hard to see how the medical records would be relevant to any legal determination.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion for discovery from the Government should be denied.

Dated: New York, New York
November 12, 2014

Respectfully submitted,

PREET BHARARA
United States Attorney
Southern District of New York

By: <u>s/Stanley J. Okula, Jr.</u>
STANLEY J. OKULA, JR.
Assistant United States Attorney
(212) 637-1585
stan.okula@usdoj.gov
NANETTE L. DAVIS
Special Assistant United States Attorney
(212) 637-1117
nanette.l.davis@usdoj.gov

9

**CERTIFICATE OF SERVICE**

      I hereby certify that this document, filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants on the above date.

      By:     s/Stanley J. Okula, Jr.
          STANLEY J. OKULA, JR.
          Assistant United States Attorney
          (212) 637-1585
          stan.okula@usdoj.gov

10